UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MARRIOTT OWNERSHIP RESORTS, INC., MARRIOTT VACATIONS WORLDWIDE CORP., MARRIOTT RESORTS, TRAVEL COMPANY, INC and MARRIOTT RESORTS HOSPITALITY CORPORATION,**

        **Plaintiffs,**

v.                                                   Case No:  6:14-cv-1400-Orl-41TBS

**WILLIAM B. STERMAN,**

        **Defendant.**

## ORDER

THIS CAUSE is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 20), filed October 16, 2014, and Defendant's First Amended Motion to Compel Arbitration and Stay Action ("Amended Motion to Compel") (Doc. 22), filed October 17, 2014. For the reasons stated herein, the Court will grant Defendant's Amended Motion to Compel and deny Plaintiffs' Motion for Summary Judgment.

### I.   FACTUAL BACKGROUND

Plaintiffs filed the Complaint (Doc. 1) on August 28, 2014, seeking a declaratory judgment. Plaintiffs are a group of related business entities that provide "timeshares and vacation destination experiences." (*Id.* ¶¶ 5–8). Defendant is an individual and the owner of a timeshare interest in Plaintiffs' Custom House Leasehold Condominium ("Custom House"). (Am. Mot. to Compel at 1). Defendant claims that his ownership interest entitles him to reserve one use week at the Custom House each year during specified weeks. (*Id.* at 3).

In August 2014, Defendant commenced arbitration against Plaintiffs alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of Massachusetts's consumer protection laws and Real Estate Time-share Act. (Statement of Claim, Doc. Nos. 1-3 to 1-6).[1] Specifically, Defendant claims that Plaintiffs' creation of a points-based ownership model in 2010 caused week owners, like Defendant, to experience "increased difficulty in reserving units" and diminished the value of their ownership interests. (*Id.* at 9–14). After receiving Defendant's Arbitration Notice, Plaintiffs filed the instant action seeking to enjoin Defendant from proceeding in arbitration or, in the alternative, a declaration that Defendant's claims cannot be arbitrated in class arbitration. (Compl. ¶¶ 33–36).

## II.    THE AGREEMENTS

The parties' arbitrability dispute arises out of two agreements between the parties: (1) the Leasehold Master Deed and Time-Share Instrument ("Master Deed") (Doc. Nos. 22-2, 22-3)[2] and (2) the Contract of Sale for Time-Share Estates ("Purchase Contract") (Doc. 1-2). The Master Deed contains an arbitration provision, while the Purchase Contract contains a forum selection clause. Plaintiffs argue that Defendant's claims arise under the Purchase Contract and thus, there is no valid arbitration agreement. Defendant argues that his claims arise under the Master Deed and are subject to the arbitration provision therein.

---

[1] The Statement of Claim is contained in docket entries 1-3 through 1-6. Pinpoint citations to this document will be to the page number located at the bottom center of the document.

[2] To the extent that Plaintiffs argue that Defendant is not a party to the Master Deed, this argument is contrary to the language of both the Master Deed and the Purchase Contract. (*See* Master Deed, Doc. Nos. 22-2, 22-3, at 71 ("Each Owner . . . shall be governed by and shall comply with this Master Deed and the By-Laws attached hereto."); Purchase Contract, Doc. 1-2, at 3 ("Purchaser acknowledges that he accepts the Time-Share Estate subject to . . . the terms and conditions of the Master Deed.")). Thus, the provisions of the Master Deed are binding on both Plaintiffs and Defendant.

The Master Deed incorporates by reference and attachment the Operating Agreement and Bylaws ("Bylaws") and the Procedures for Reserving Usage. The Bylaws contain the following arbitration provision:

> Except for a controversy or claim concerning an owner's payment of assessments . . . in the event of any controversy or claim arising under or related to the Master Deed, these By-Laws, or the Rules and Regulations ("dispute"), if the dispute cannot be resolved by negotiation, the parties agree to submit the dispute to binding arbitration pursuant to this Article XX and the then-current commercial arbitration rules and supervision of the American Arbitration Association.

(Bylaws, Ex. G to Master Deed, Doc. 22-3, at 29). The provision further states that the arbitration shall be held in Boston and subject to the substantive laws of Massachusetts. (*Id.* at 29–30).

The Purchase Contract, which is the instrument by which Defendant purchased his legal interest in the Custom House, contains the following forum selection clause:

> This Contract shall be governed by and construed in accordance with the laws of the State of Massachusetts, regardless of the laws that might otherwise govern under applicable principles of conflicts of law thereof. Each of the parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the State or Federal courts located in Orange County, Florida, and any appellate court thereof, in any action or proceeding arising out of or relating to this Contract.

(Purchase Contract at 4).

### III. LEGAL STANDARDS

#### A. Arbitration

In general, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* governs the enforceability of arbitration provisions in contracts involving transactions in interstate commerce. *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA embodies a 'liberal federal policy favoring arbitration agreements.'" *Hill*, 398 F.3d at 1288 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). However, it is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quotation omitted).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In determining whether to compel a party to arbitrate, the court does not weigh the merits of the parties' claims. *AT & T Techs.*, 475 U.S. at 649. Rather, the court must limit its review to three factors: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl-22DAB, 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007).

### B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). Summary judgment is mandated "against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251–52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### IV.   ANALYSIS

#### A.   Arbitrability

Neither party disputes the validity of the Purchase Agreement or the Master Deed, rather the parties dispute which agreement controls Defendant's claims. Plaintiffs argue that the Court is obligated to determine which contract, the Master Deed or the Purchase Contract, gives rise to Defendant's claims. Plaintiffs further argue that if Defendant's claims arise under the Purchase Contract then the claims are beyond the scope of the parties' agreement to arbitrate. Defendant, on the other hand, argues that the parties agreed to leave questions of arbitrability, including the scope of the arbitration provision, to the arbitrator.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs.*, 475 U.S. at 649. In the Eleventh Circuit, "[b]y incorporating the AAA Rules . . . into their agreement, the parties clearly and unmistakably agree[] that the arbitrator should decide" questions of arbitrability. *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). The Master Deed incorporates the Commercial Arbitration Rules of the American Arbitration Association ("AAA") into the arbitration provision. Therefore, to the extent that Defendant's claims relate to the Master Deed, the arbitrator, not the Court, must determine the scope of the arbitration agreement.

Once it has been established that an arbitration clause exists, there is a presumption in favor of arbitrability such that the Court should deny a motion to compel only where "'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT & T Techs.*, 475 U.S. at 650 (quoting *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583 (1960)). Thus, where there are multiple contracts that conflict over whether the question of arbitrability has been committed to the arbitrator, the court cannot deny a motion to compel arbitration if the dispute is arguably within the scope of the arbitration provision. *See U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014). "But the district court cannot weigh the evidence to decide which contract governs the dispute or recast the allegations of fact in the complaint." *Id.* Accordingly, the Court must look at the factual allegations of the Statement of Claim and determine if, based on the allegations, the Master Deed is susceptible to an interpretation that would cover Defendant's claims.

The Master Deed and the Procedures for Reserving Usage can arguably cover the allegations contained in Defendant's Statement of Claim. Defendant claims that Plaintiffs have breached the Master Deed by adversely impacting Defendant's use rights and "not effectively operating the services necessary to ensure that [Defendant is] able to utilize [his] week[] ownership interest." (Statement of Claim at 19). The Master Deed and Procedures for Reserving Usage both set forth various obligations for the Plaintiffs and Defendant in relation to Defendant's right to exercise his week ownership interest. For example, Sections 14 and 15 of the Master Deed explicitly set forth obligations and procedures regarding use of the timeshare units. (Master Deed at 38–43). Furthermore, the Procedures for Reserving Usage expressly detail the obligations of both parties in relation to the reservation of units for week ownership interest holders. (Procedures for Reserving Usage, Ex. F to Master Deed, Doc. 22-3). The Master Deed plausibly encompasses the dispute and therefore, it is for the arbitrator to determine if Defendant's claims are arbitrable in the first instance. Having determined that a valid agreement to arbitrate exits and that the parties have delegated the question of arbitrability to the arbitrator, the Court will compel arbitration in accordance with § 4 of the FAA.

### B. Class Arbitration

"[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis omitted). In the Motion for Summary Judgment, Plaintiffs argue that Defendant may not compel class arbitration of his claims because Plaintiffs have not agreed to class arbitration. Defendant contends that the parties have unmistakably delegated the issue of class arbitration to an arbitrator.

Pursuant to the Master Deed, the parties have agreed to be bound by the AAA Commercial Arbitration Rules ("Commercial Rules"). In agreeing to be bound by the Commercial Rules, the parties also agreed to the Supplementary Rules of Class Arbitrations ("Supplementary Rules"). *See* Supplementary Rule 1(a), Supplementary Rules of Class Arbitrations, *available at* https://www.adr.org/aaa/ShowPDF?url=/cs/groups/commercial/documents/document/dgdf/mda0 /~edisp/adrstg_004129.pdf; *see also Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 635 (5th Cir. 2012) ("[T]he parties' agreement to the AAA's Commercial Rules also constitutes consent to the Supplementary Rules."), *abrogated on other grounds by Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013); *Arcidiacono v. Limo, Inc.*, No. 8:10-cv-780-T-33AEP, 2010 WL 4511083, at *1–2 (M.D. Fla. Nov. 2, 2010) (stating that the incorporation of the Commercial Rules also incorporates the Supplementary Rules and the question of class arbitration is for the arbitrator). Pursuant to Supplementary Rule 3, "the arbitrator shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class."

Plaintiffs argue that because the Master Deed was filed in 1996, prior to the effective date of the Supplementary Rules in 2003, the arbitration provision cannot incorporate the Supplementary Rules. The arbitration provision explicitly states that the parties agree to "submit the dispute to binding arbitration pursuant to . . . the *then-current commercial arbitration rules* and supervision of the [AAA]." (Bylaws at 29 (emphasis added)). Plaintiffs did not bargain for the AAA rules as those rules existed in 1996, but rather opted for the application of those rules as they would exist if and when a dispute arose in the future. Defendant filed his claim in 2014, well after the adoption of the Supplementary Rules in 2003. Accordingly, the "then-current" Commercial Rules included the Supplementary Rules at the time this dispute arose. *Cf. Marriott Ownership Resorts, Inc. v. Flynn*, Civil No. 14-00372 JMS-RLP, 2014 WL 7076827, at *14–15 (D. Haw. Dec.

11, 2014) (holding that the parties were bound by the Supplementary Rules because Commercial Rule 1 calls for the application of the Commercial Rules as amended and existing at the time the dispute arises).

Supplementary Rule 3 unquestionably delegates the question of class arbitration to the arbitrator. In the Eleventh Circuit, the incorporation of AAA rules that give the arbitrator authority to determine the issue constitutes a clear and unmistakable delegation of authority to the arbitrator. *See Terminix*, 432 F.3d at 1332. Thus, the question of class arbitrability is also reserved for the arbitrator.

## V. CONCLUSION

In accordance with the foregoing, it is hereby **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Motion for Summary Judgment (Doc. 20) filed on October 16, 2014, is **DENIED**.

2. Defendant's Amended Motion to Compel (Doc. 22) filed on October 22, 2014, is **GRANTED**. Plaintiffs shall submit to arbitration in accordance with the terms set forth in Article XX of the Bylaws (Ex. G to Master Deed, Doc. 22-3).

3. Defendant's Motion to Compel Arbitration and Stay Action (Doc. 21) filed on October 17, 2014, is **DENIED as moot**.

4. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Orlando, Florida on January 16, 2015.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record